IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ANDRE L. IBRAHIM | § | |
| | § | |
| v. | § | NO. 4:25-CV-00369-SDJ-BD |
| | § | |
| BRIAN JOHNSON, *et al.* | § | |

**ORDER AND REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pro se plaintiff Andre L. Ibrahim sued Eaton Corporation and two of its employees, Brian Johnson and Michelle Johnson (referred to here by their first names to avoid confusion), for employment discrimination and state-law torts. Dkt. 27; *see* 28 U.S.C. §§ 1331, 1367. Michelle was never served. The other two defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Dkt. 5. Ibrahim moved to toll the limitations period, Dkt. 12, then amended his complaint with leave of court, Dkt. 27. Days after Ibrahim filed his amended complaint, he filed two motions for leave to supplement that complaint. Dkts. 28, 29. The defendants moved to dismiss the amended complaint. Dkt. 30; *see* Dkt. 33 (response). Ibrahim moved for leave to file a new amended complaint, Dkt. 34; *see* Dkts. 35 (proposed amended complaint), 36 (response), 52 (reply), 53 (sur-reply), then moved to substitute a different proposed amended complaint, Dkt. 60; *see* Dkts. 61 (proposed substituted amended complaint), 62 (response), 63 (reply), 65 (sur-reply). Ibrahim contends that his proposed amended complaint, Dkt. 35, moots his motions for leave to supplement his complaint, Dkt. 34 at 1–2.

The court will recommend that Ibrahim's motion for leave to amend, Dkt. 34, be granted, that his motion for leave to substitute an amended complaint, Dkt. 60, be denied, and that the defendants' motion to dismiss, Dkt. 30, be granted in part and denied in part. Ibrahim's motion to toll the statute of limitations, Dkt. 12, will be denied. His motions for leave to supplement, Dkts. 28, 29, and the defendants' first motion to dismiss, Dkt. 5, will be dismissed as moot.

# BACKGROUND

## I. Factual Background

Ibrahim is a practicing Muslim of African descent who, between 2021 and 2023, was employed by Eaton as a supervisor. Dkt. 27 at 2. Ibrahim alleges that, beginning in July 2021, he began performing the duties of a higher-ranking position and was promised that he would eventually be promoted to that position. *Id.*

Sometime during the first half of 2023, Ibrahim began to clash with Michelle, who worked in Eaton's human-resources department. *Id.*; Dkt. 35 at 2. According to Ibrahim, Michelle asked him to participate in racially discriminatory discipline against a white coworker, Joey Franklin, even though black employees were not disciplined for the same conduct. *Id.* Ibrahim's refusal to participate in the disciplinary actions "led to [an] escalating conflict" with Michelle. *Id.*

Ibrahim alleges that, immediately after he refused to take part in disciplining Franklin, Michelle stopped arranging for Halal meals to be available for him at company functions. *Id.*; Dkt. 35 at 2. Around that same time, Michelle learned that Ibrahim was dating a white woman. Dkt. 27 at 2. He alleges that Michelle exhibited hostility toward him because of that relationship and called him "fake." *Id.*

The complaint does not make the exact timeline of events clear, but during the period when Ibrahim was feuding with Michelle (another filing indicates around April of 2023, Dkt. 63-3 at 16, 21), Eaton denied Ibrahim the promotion he had been promised despite good performance. Dkt. 27 at 2. According to the complaint, Eaton hired a white candidate for the role instead, giving Ibrahim only a pretextual interview after he complained. *Id.* Ibrahim alleges that he was denied the promotion because of "biased feedback" from Michelle. *Id.*

Ibrahim went to Michelle's superior to complain about her conduct toward him and Franklin. *Id.* at 2–3. Three or four weeks later, Ibrahim was fired. *Id.* at 3.

Eaton claims that Ibrahim was fired for brandishing a firearm at another person on or near its property. *Id.*; Dkt. 63-1 at 2–3. Ibrahim claims that, although he kept a gun in his car, he did not

brandish it or threaten anyone. Dkt. 27 at 3. He says that Brian, a human-resources manager, fabricated that story and Eaton used it as a pretext for his termination. *Id.*

Ibrahim also alleges that Michelle told two other people that he was fired for threatening a person with a gun, which "destroyed [his] reputation in the local job market and social life." *Id.* During the aftermath of that alleged incident, Ibrahim alleges that the defendants investigated his private communications and off-duty conduct and disclosed the details of that investigation to those same two people. *Id.* at 4.

## II. Procedural History

Ibrahim timely filed a charge with the Equal Employment Opportunity Commission ("EEOC"), received a right-to-sue letter, Dkt. 35 at 3, and filed his original complaint in this court. Dkt. 1. Eaton and Brian moved to dismiss that complaint, Dkt. 5, and Ibrahim moved for leave to amend it, Dkt. 16. The court granted leave to amend but identified several deficiencies in the proposed amended complaint and therefore ordered Ibrahim to file a new amended complaint. Dkt. 25. Ibrahim filed his second amended complaint, Dkt. 27, followed by two motions for leave to supplement it, Dkts. 28, 29. Eaton and Brian again moved to dismiss. Dkt. 30.

Ibrahim then moved for leave to file a third amended complaint, Dkt. 34, which he says moots the motions for leave to supplement and addresses deficiencies that the defendants identified in their motion to dismiss. *Id.* at 1–2. But rather than supersede the second amended complaint entirely, the proposed third amended complaint incorporates the facts pleaded in the second amended complaint by reference. Dkt. 35 at 4. The defendants opposed Ibrahim's motion for leave to amend, arguing that amendment is futile. Dkt. 36.

Before the court ruled on either the motion to dismiss or the motion for leave to amend, Ibrahim moved to substitute his proposed third amended complaint for a different proposed third amended complaint. Dkt. 60. The defendants do not believe that complaint fixes the problems they identified earlier. Dkt. 62.

# LAW

## I. Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) authorizes a motion to dismiss for "failure to state a claim upon which relief can be granted." When considering such a motion, the court must identify and exclude legal conclusions that "are not entitled to the assumption of truth," then consider the remaining "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must accept as true all well-pleaded facts and view them in the light most favorable to the plaintiff. *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020). The complaint will survive the motion to dismiss if it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss" from being granted. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (quotation marks omitted). The court's scope of review under Rule 12(b)(6) is limited to "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022).

A plaintiff proceeding pro se must still "set forth facts giving rise to a claim on which relief may be granted." *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993). But his complaint should be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## II. Motions for Leave to Amend

The court must "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). It may deny leave to amend based on "(1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party by allowing the amendment, [or] (5) futility of amendment." *Jack v. Evonik Corp.*, 79 F.4th 547, 564–65 (5th Cir. 2023). And although a pro se plaintiff is usually entitled to an opportunity to amend, *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam), dismissal with prejudice is warranted if the plaintiff has already alleged his

4

best case, *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999). Whether to permit amendment is within the sound discretion of the court. *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002).

## DISCUSSION

### I. Title VII

Claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, for retaliation, racial discrimination, and failure to accommodate his religion lie at the core of Ibrahim's complaint. Dkt. 27. The defendants argue that Ibrahim failed to adequately plead those claims because he did not allege that he exhausted his administrative remedies. Dkt. 30 at 4. But the first proposed third amended complaint cures that defect by pleading that Ibrahim timely filed a charge with the EEOC and received a right-to-sue letter. Dkt. 35 at 3. The defendants also argue that: (A) the retaliation claim fails because, among other things, Ibrahim did not engage in protected activity; (B) the disparate-treatment claim fails because the complaint does not allege that any adverse action against Ibrahim was taken because of his race; (C) the religious-accommodations claim fails because the complaint does not allege that any requirement of Ibrahim's job was not accommodated; and (D) the claims against Brian individually fail because Title VII does not create individual liability. Dkt. 30 at 5–8. The first two of those arguments fail; the second two succeed.

### A. Retaliation

Title VII prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a); *see Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 576–77 (5th Cir. 2020), *as revised* (Aug. 14, 2020) (describing § 2000e-3(a) as Title VII's antiretaliation provision). Retaliation claims brought under Title VII are analyzed under the *McDonnell Douglas* burden-shifting framework. *Johnson v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 460 (5th Cir. 2024) (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

5

A prima facie case of retaliation has three elements: (1) the plaintiff engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *Lewis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 134 F.4th 286, 295 (5th Cir. 2025). Ibrahim has pleaded sufficient facts to satisfy each of those elements.

### 1. Protected activity

The court previously noted that the then-proposed first amended complaint did not allege enough details for the court to conclude that Ibrahim had engaged in protected activity. Dkt. 25 at 4. The second amended complaint cured that deficiency.

An employee engages in protected conduct when he opposes an employment practice that he reasonably believes violates Title VII. *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 619 (5th Cir. 2020). That can include complaining to management about discrimination, *id.* at 619–20, as long as the complaint relates to a specific practice, *Alack v. Beau Rivage Resorts, Inc.*, 286 F. Supp. 2d 771, 774–75 (S.D. Miss. 2003). It can also include refusal to carry out an order to engage in an unlawful employment practice. *EEOC v. HBE Corp.*, 135 F.3d 543, 554 (8th Cir. 1998); *Moyo v. Gomez*, 32 F.3d 1382, 1385 (9th Cir.), *amended,* 40 F.3d 982 (9th Cir. 1994).

When a claim is based on an employee's complaint to management and the employee "'communicates to [his] employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication' virtually always 'constitutes the employee's opposition to the activity.'" *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009). That is true "even when the underlying conduct complained of was not in fact unlawful," as long as the employee "'possessed a good faith, reasonable belief'" that it was. *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (quoting *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999)); *see Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140–41 (5th Cir. Unit A 1981).

Whether an adverse action supports a claim of retaliation "often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a

simple recitation of the words used or the physical acts performed." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998)). Courts should not require an employee to have an in-depth familiarity with the law. The point of the reasonable-belief doctrine, after all, is to encourage employees to report to their employers when they reasonably think discrimination might have occurred. *Blizzard v. Newport News Redevelopment & Hous. Auth.*, 670 F. Supp. 1337, 1343–44 (E.D. Va. 1984) (collecting cases); *see Payne*, 654 F.2d at 1140 (noting that the reasonable-belief doctrine is meant to "avoid the chilling effect that would otherwise arise").

Ibrahim alleges that he engaged in two protected activities. The first is straightforward: his refusal of Michelle's request for him to discipline Franklin, a white employee, for conduct that was tolerated by black employees. Dkt. 27 at 2. Refusing to take part in discrimination is protected activity. *HBE Corp.*, 135 F.3d at 554.

The second requires a bit more explanation. Ibrahim alleges that he "made formal complaints" to Eaton's director of operations about Michelle. Dkt. 27 at 2. Ibrahim does not specify exactly what conduct he complained about, but in context it must have been either Michelle's discrimination against Franklin or her retaliation against Ibrahim. *See id.*; *see also* Dkt. 35 at 2 (proposed third amended complaint alleging that Ibrahim complained about "Michelle Johnson's discriminatory conduct").

If Ibrahim was referring to Michelle's discrimination against Franklin, then he was complaining about unlawful conduct and engaged in protected activity. If he was referring to the retaliation against him, it is unclear whether that conduct was actually unlawful. As discussed below, it is unclear whether Michelle personally took a materially adverse action against Ibrahim before he complained to the director of operations. *See infra* Part I.A.2. But even if, at that point, Michelle had not actually violated Title VII, Ibrahim could have reasonably thought she had.

In *EEOC v. Rite Way Service, Inc.*, the Fifth Circuit discussed when lawful conduct could reasonably be believed to be unlawful. 819 F.3d 235, 243–44 (2016). Relevant considerations include whether the conduct was directed at a specific employee, whether it came from a person

7

in a supervisory position, the context in which the conduct occurred, and the setting in which the plaintiff voiced his complaint. *Id.* Isolated incidents usually are not enough. *Id.* at 243.

If the only action Michelle took against Ibrahim before he complained to the director of operations was to stop arranging for Halal meals, that was probably not enough to constitute illegal retaliation. *See Earle v. Aramark Corp.*, 247 F. App'x 519, 524 (5th Cir. 2007). But Ibrahim could reasonably have believed that it was. He alleges that Michelle refused to provide him with Halal lunches on an ongoing basis. Dkt. 27 at 2. That conduct was directed at Ibrahim specifically and not any other employees, and it came from a supervisory employee. *Id.* Ibrahim alleges a belief that Michelle had taken more serious discriminatory action against others and was exhibiting animus toward him because of his relationship with a white woman. *Id.* And actions that exclude an employee from meetings and company functions can sometimes be materially adverse under Title VII. *See Burlington N.*, 548 U.S. at 69. That makes it reasonable, even if erroneous, for Ibrahim to believe that Michelle had illegally retaliated against him. Whatever "conduct" Ibrahim complained about, it was enough to render his complaint to the director of operations protected activity.

### 2. Adverse employment action

As long as it is materially adverse to the plaintiff, an adverse employment action in the retaliation context does not need to concern employment and the workplace or affect the plaintiff's employment conditions. *Id.* at 68. A materially adverse action is one that would dissuade a reasonable employee from making or supporting a charge of discrimination. *Id.*

Ibrahim's complaint contains three actions that could potentially constitute adverse employment actions: Michelle's refusal to provide Halal meals, Eaton's failure to promote him, and his termination. Although the first of those is not a materially adverse action, the latter two are.

### a. Refusal to provide Halal meals

Ibrahim alleges that, before he refused to participate in discrimination against Franklin, Michelle arranged for him to have Halal meals during company events. Dkt. 27 at 2. But after

8

Ibrahim defied her, she stopped doing so. *Id.* That alone is not enough to constitute a materially adverse action. Ibrahim did not allege that he was required to eat during those events, that he was required to attend those events, that he was prohibited from bringing his own food, or that he was compelled to eat non-Halal food. He also did not allege how often he did not get Halal meals. That he was not given free food on occasion would probably not dissuade a reasonable employee from making or supporting a charge of discrimination. *See Rogers v. United States*, 696 F. Supp. 2d 472, 487 (W.D. Pa. 2010) (holding that refusal to provide a prisoner with a single Halal meal was not "a substantial burden on the exercise of [the prisoner's] religion") (citing *Pratt v. Corr. Corp. of Am.*, 267 F. App'x 482, 483 (8th Cir. 2008)).

The proposed third amended complaint attempts to cure that deficiency, but it fails to do so. It alleges that Michelle's refusal to arrange Halal meals effectively excluded Ibrahim from company-sponsored meetings and lunches. Dkt. 35 at 2. But it does not allege that those meals and lunches had any particular value to Ibrahim's professional advancement.

In *Burlington Northern*, the Supreme Court hypothesized that "[a] supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination." 548 U.S. at 69. Citing that passage, the Fifth Circuit has found that "excluding [an employee] from a training lunch, subjecting her to disciplinary write-ups, and micro-managing her performance . . . are not materially adverse employment actions." *Earle*, 247 F. App'x at 524. Similarly, refusal to provide Ibrahim with Halal meals is not an adverse employment action.

### b. Denial of promotion and termination

Ibrahim also alleges that he was denied a promotion and terminated. Dkt. 27 at 2–3. Both are adverse employment actions. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (citing *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993), regarding termination); *Beaumont v. Tex. Dep't of Crim. Just.*, 468 F. Supp. 2d 907, 926 (E.D. Tex. 2006)

9

(stating that "the denial of a promotion in reprisal for engaging in protected activity would constitute a materially adverse employment action").

### 3. Causation

A retaliation claim requires a showing that the employer took an adverse employment action "because [an employee] has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a). Traditional "but-for" causation applies in the retaliation context. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). That is, the employee must show that the employer would not have taken an adverse employment action if the employee had not engaged in protected activity. *See McDaniel v. Temple ISD*, 770 F.2d 1340, 1346 (5th Cir. 1985).

The EEOC's guidance—which, although not binding, can be helpful, *see, e.g.*, *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 399 (2008)—lists some evidence that could show causation, including: "suspicious timing, verbal or written statements, comparative evidence that a similarly situated employee was treated differently, falsity of the employer's proffered reason for the adverse action, or any other pieces of evidence which, when viewed together, may permit an inference of retaliatory intent." EEOC Guidance on Retaliation and Related Issues, No. 915.004(II)(C)(3) (2016).

Ibrahim has pleaded sufficient facts to show that at least his termination, if not also the denial of his sought-after promotion, was caused by his protected activity. Temporal proximity between an employee's protected activity and an adverse action can establish a prima facie case of retaliation if it is "very close." *Lyons v. Katy ISD*, 964 F.3d 298, 305 (5th Cir. 2020). Anywhere between a few days and six and a half weeks is sufficiently close. *Id.* Here, Ibrahim alleges that he was fired three or four weeks after he reported Michelle's discriminatory conduct to the director of operations. Dkt. 27 at 3. That permits an inference of causation.

There might also be enough support for a finding that the denial of Ibrahim's promotion was caused by his protected conduct. Ibrahim alleged that he was promised a promotion and was already performing the duties of that job—but was denied a promotion because of Michelle's input. *Id.* at 2; *see EEOC v. EmCare, Inc.*, 857 F.3d 678, 685 n.3 (5th Cir. 2017) (explaining that

10

"[p]laintiffs may use a cat's paw theory to prove causation when they cannot show the official decisionmaker had a retaliatory motive, but can show that another individual influenced that decisionmaker"). That could be enough. *See McDonnell Douglas*, 411 U.S. at 802 (holding that a prima facie showing of causation exists when a person was rejected for a job despite being qualified). Another filing indicates that Ibrahim was denied a promotion in early 2023, around the same time he refused to participate in discrimination against Franklin. Dkt. 63-3 at 16, 21. But it is not clear from any filing which of those events happened first. If Ibrahim was denied a promotion before he engaged in protected activity, that would of course not be retaliation. But if he was denied a promotion after he engaged in protected activity, there would be enough to infer that the denial was caused by his protected activity.

In any event, the complaint and proposed third amended complaint together contain enough facts pairing at least one adverse action with at least one protected activity for Ibrahim's retaliation claim to survive.

### B. Disparate treatment

Title VII also makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). At the pleading stage, the plaintiff need not present evidence of that type of disparate treatment; he must only "plead sufficient facts on . . . the ultimate elements of a disparate treatment claim to make his case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016).

Those elements are "(1) an adverse employment action, (2) taken against a plaintiff because of [his] protected status." *Hamilton v. Dallas County*, 79 F.4th 494, 502 (5th Cir. 2023) (quotation marks omitted). On the second element, the plaintiff may rely on either direct or circumstantial evidence of discrimination. *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019). "Direct evidence is evidence which, if believed, proves the fact without inference or presumption." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005). "When a

11

plaintiff builds a case on circumstantial evidence, a court analyzes the plaintiff's claim under the *McDonnell Douglas* framework." *Cicalese*, 924 F.3d at 766. That means that the plaintiff's allegations must "suggest" that the defendant's "actions were based on" the employee's protected status or must allege that the employer "treated similarly situated employees of other [protected classes] more favorably." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013).

The *McDonnell Douglas* framework is flexible; it adapts to the circumstances of the case at hand. *Barnes v. Yellow Freight Sys., Inc.*, 778 F.2d 1096, 1100 (5th Cir. 1985). But at base, a plaintiff must show that:

> (1) [he] is a member of a protected class under the statute; (2) he applied and was qualified for a job or promotion for which his employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) the position remained open and the employer continued to seek applicants, or the position was given to someone outside the protected class.

*Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 382 (5th Cir. 2006) (citing *McDonnell Douglas*, 411 U.S. at 802).

Here, Ibrahim alleged that: (1) he is of African descent; (2) he applied for a promotion, was qualified for the promotion, and was even promised that he would get the promotion; (3) despite his qualifications, he was rejected; and (4) the promotion went to a white applicant instead. Dkt. 27 at 2. Those allegations establish a prima facie case that Ibrahim was discriminated against because of his race. It might seem incongruous that Ibrahim was both discriminated against to the benefit of a white applicant and retaliated against for refusing to discriminate against a white employee. But that is an issue to be sorted out in discovery and at trial.

**C. Religious accommodation**

Title VII requires an employer to accommodate "all aspects of religious observance and practice" unless the employer demonstrates that it cannot do so "without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j); *see Antoine v. First Student, Inc.*, 713 F.3d 824, 831 (5th Cir. 2013). An employer fails to accommodate an employee's religion when "(1) [the employee] held a bona fide religious belief, (2) [his] belief conflicted with a requirement

12

of [his] employment, (3) [his] employer was informed of [his] belief, and (4) [he] suffered an adverse employment action for failing to comply with the conflicting employment requirement." *Davis v. Fort Bend County*, 765 F.3d 480, 485 (5th Cir. 2014) (quoting *Tagore v. United States*, 735 F.3d 324, 329 (5th Cir. 2013)).

As noted, the second amended complaint alleges that Michelle stopped arranging for Ibrahim to have Halal meals at company lunches and meetings. Dkt. 27 at 2. It does not allege that he was required to eat at those meetings or that his Halal diet otherwise conflicted with any requirement of the job.

The proposed third amended complaint attempts to cure that deficiency, adding that Ibrahim was "excluded" from those lunches and meals because of the lack of Halal food. Dkt. 35 at 2. Construing the allegations liberally, the court will assume that being "excluded" from the lunches and meetings means that Ibrahim could not attend those lunches and meetings. But the proposed third amended complaint still does not allege that Ibrahim was required to attend those lunches and meetings or suffered any adverse action for failing to do so. Without that, it does not satisfy the second or fourth elements of a religious-accommodations claim.

### D. Individual liability

Ibrahim's Title VII claims are brought against both Eaton and Brian. Dkt. 27. Although Eaton was Ibrahim's employer, Brian was a fellow employee—and, as such, not subject to liability. As the Fifth Circuit has explained,

> [u]nder Title VII, an "employer" includes any "person engaged in an industry affecting commerce . . . and any agent of such a person." 42 U.S.C. § 2000e(b). This circuit has held that there is no individual liability for employees under Title VII. While Title VII's definition of the term employer includes "any agent" of an employer, Congress's purpose was merely to import *respondeat superior* liability into Title VII. Further, a plaintiff is not entitled to maintain a Title VII action against both an employer and its agent in an official capacity. Under the reasoning of our case law interpreting Title VII, the individual Defendants cannot be liable to [the plaintiff] in their individual or official capacities . . . .

*Smith v. Amedisys Inc.*, 298 F.3d 434, 448–49 (2002) (citations omitted). Under that precedent, Eaton can be responsible for Brian's conduct, but Brian cannot be personally liable for it.

13

## II. Section 1981

42 U.S.C. § 1981 provides that

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Employment claims "brought pursuant to Title VII and § 1981 are governed by the same evidentiary framework, such that the analyses under both statutes are substantively the same." *Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500, 506 (5th Cir. 2024) (quoting *Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010) (per curiam)); *see CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008) (concluding that § 1981 encompasses retaliation claims). Because Ibrahim's Title VII disparate-treatment and retaliation claims survive the defendants' challenge, so does his § 1981 claim.

Unlike Title VII, however, § 1981 creates individual liability with respect to a "supervisor[] who w[as] personally involved in the discriminatory activity" because such a person is "in a position to act on behalf of the employer to make and enforce the company's employment contracts." *Miller v. Wachovia Bank, N.A.*, 541 F. Supp. 2d 858, 863, 865 (N.D. Tex. 2008) (quoting *Hicks v. IBM*, 44 F. Supp. 2d 593, 594 (S.D.N.Y. 1999)). Because Ibrahim pleaded that Brian is an HR manager and participated in his termination, his § 1981 claim against Brian survives.

## III. Tort Claims

Ibrahim also alleges three state-law torts: (A) defamation, (B) invasion of privacy, and (C) tortious interference. Dkt. 27. The defendants argue that he did not plead sufficient facts to support relief under any of those theories and that his defamation claim is time-barred. Dkt. 30 at 10–14. They are correct.

### A. Defamation

Under Texas law, a defamation claim has four elements: "(1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the

14

requisite degree of fault, and (4) damages, in some cases." *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). "The status of the person allegedly defamed determines the requisite degree of fault." *Id.* "[T]he plaintiff must plead and prove damages, unless the defamatory statements are defamatory per se." *Id.*

The second amended complaint alleges that Brian and Michelle knowingly fabricated a story that Ibrahim had threatened another person with a gun and told that story to two other people. Dkt. 27 at 3–4. Those actions allegedly "destroyed [his] reputation in the local job market and social life." *Id.* at 3.

The complaint's allegations satisfy the elements of defamation. But the defendants' motion to dismiss raises the affirmative defense of limitations. Dkt. 30 at 10–11. In Texas, the statute of limitations for defamation is one year. Tex. Civ. Prac. & Rem. Code § 16.002(a). Ibrahim does not dispute that the limitations period has expired. He instead argues that the defendants fraudulently concealed the fact of the defamation by marking their EEOC position statement as confidential. Dkt. 33 at 4. That argument does not save the defamation claim from dismissal.

Under Texas law, "when a defendant has fraudulently concealed the facts forming the basis of the plaintiff's claim, limitations does not begin to run until the claimant, using reasonable diligence, discovered or should have discovered the injury." *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999). It is not enough that the defendants failed to disclose information to Ibrahim. *See Sunwest Bank of El Paso v. Basil Smith Eng'g Co.*, 939 S.W.2d 671, 675 (Tex. App.—El Paso 1996, writ denied). Absent a misrepresentation, which Ibrahim does not allege, fraudulent concealment applies only if the defendants owed him a duty to disclose information in their possession. *Id.* Ibrahim does not allege that they did.

In a separate motion, Ibrahim moved to toll the limitations period under the discovery rule. Dkt. 12. That rule is similar to fraudulent concealment; it tolls the limitations period until the plaintiff "learned or by reasonable diligence could have learned that it had a cause of action." *Edmark Indus. SDN. BHD. v. S. Asia Int'l (H.K.) Ltd.*, 89 F. Supp. 2d 840, 842–43 (E.D. Tex.

15

2000). The plaintiff has the burden to show that the discovery rule applies. *Garden City Boxing Club, Inc. v. Johnson*, 552 F. Supp. 2d 611, 616 (N.D. Tex. 2008).

Ibrahim asserts that, although he had been "aware that the statements made by Defendant Brian Johnson were false" for some time, he "did not and could not know that Eaton Corporation had been made aware of their falsity during the[] internal investigation, nor that they had obtained the 'alleged victim's' testimony contradicting those statements." Dkt. 12 at 2 (boldface removed). Defamation against a private individual requires only negligence, not actual knowledge that the defamatory statement was untrue. *In re Lipsky*, 460 S.W.3d at 593. So the moment the defendants discovered that their statements were false is irrelevant. In any event, a cause of action for defamation accrues when the defamatory communication is published, not when the alleged defamer learns of its falsity, *Akin v. Santa Clara Land Co.*, 34 S.W.3d 334, 340 (Tex. App.—San Antonio 2000, pet. denied), so Ibrahim is not entitled to tolling.

### B. Invasion of privacy

Tortious invasion of privacy for the public disclosure of private facts has three elements: "(1) publicity was given to matters concerning one's personal life, (2) publication would be highly offensive to a reasonable person of ordinary sensibilities, and (3) the matter publicized is not of legitimate public concern." *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 474 (Tex. 1995).

The court previously noted that Ibrahim had not identified "what private matters were published or explain[ed] why publication of those matters would be highly offensive or why they are not of legitimate public concern." Dkt. 25 at 5. The second amended complaint did not cure those defects. It alleged that "details of the HR investigation and termination from [Ibrahim]'s file" were disclosed. Dkt. 27 at 4. The proposed third amended complaint adds that those details are "purely personal, highly offensive to a reasonable person, and unrelated to any legitimate public concern." Dkt. 35 at 3. But it offers no facts to support those allegations. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

16

### C. Tortious interference

The complaint alleges "tortious interference with prospective economic advantage." Dkt. 27 at 4. That theory is not viable in Texas. *See Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 717 (Tex. 2001). And although a Texas plaintiff can proceed on the related theories of tortious interference with contract and tortious interference with prospective business relations, *id.* at 727, Ibrahim neither seeks to proceed on those theories nor alleges what they require. *See ACS Inv'rs, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997); *Dunham Eng'g, Inc. v. Sherwin-Williams Co.*, 404 S.W.3d 785, 797 n.7 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

## IV. Amended Complaints

Ibrahim moved for leave to file the proposed third amended complaint, Dkt. 34, then for leave to replace it with another one, Dkt. 60. The first version of the proposed third amended complaint cures Ibrahim's failure to plead exhaustion of administrative remedies and expressly incorporates the facts of the second amended complaint by reference. Dkt. 35 at 3–4; *see* Fed. R. Civ. P. 10(c) (providing that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion"); *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam) (explaining that "[a]n amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading"). The second version of the proposed third amended complaint does neither of those things. *See* Dkt. 61.

The defendants argue that leave to amend should be denied as to each of the proposed third amended complaints based on futility. Dkts. 36, 62. But as noted, the first proposed third amended complaint, Dkt. 35, sufficiently pleads some of Ibrahim's causes of action. To the extent it pleads claims other than those this report has identified as deficient, it should be allowed. But because the proposed substituted third amended complaint, Dkt. 61, was filed before the court had an opportunity to analyze the first proposed third amended complaint, Dkt. 35, and fails to cure defects, leave to file it should be denied.

"Generally a district court errs in dismissing a pro se complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff *an* opportunity to amend." *Jones*, 188 F.3d at 326 (quoting *Bazrowx*, 136 F.3d at 1054). But "if a complaint alleges the plaintiff's best case, there is no need . . . for a further factual statement from the plaintiff." *Id.* at 327. Ibrahim has presented five complaints, Dkts. 1, 16-2, 27, 35, 61, and two supplemental complaints, Dkts. 28, 29. The first proposed third amended complaint, which sets forth his best case, is all he is entitled to at this point. The claims that fail even as they are articulated in that complaint should be dismissed with prejudice.

## CONCLUSION

It is **ORDERED** that:

1) Ibrahim's motion to toll the statute of limitations, Dkt. 12, is **DENIED**;

2) Ibrahim's motions to supplement his complaint, Dkts. 28, 29, are **DISMISSED AS MOOT**; and

3) the defendants' first motion to dismiss, Dkt. 5, is **DISMISSED AS MOOT**.

It is **RECOMMENDED** that:

1) Ibrahim's motion for leave to file an amended complaint, Dkt. 34, be **GRANTED**;

2) the first proposed third amended complaint, Dkt. 35, be made the operative complaint;

3) Ibrahim's motion for leave to replace the first proposed third amended complaint with a second one, Dkt. 60, be **DENIED**;

4) the defendants' motion to dismiss, Dkt. 30, be:

   a) **GRANTED** as to Ibrahim's religious-accommodation, defamation, invasion-of-privacy, and tortious-interference claims and as to his Title VII claims against Brian Johnson; and

   b) **DENIED** as to Ibrahim's retaliation and disparate-treatment claims against Eaton and as to his § 1981 claim; and

> 5) Ibrahim's religious-accommodation, defamation, invasion-of-privacy, and tortious-interference claims and his Title VII claims against Brian Johnson be **DISMISSED WITH PREJUDICE**.

* * *

Within 14 days after service of this report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1).

A party is entitled to a de novo review by the district court of the findings and conclusions contained in this report only if specific objections are made. *Id.* § 636(b)(1). Failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*; 28 U.S.C. § 636(b)(1) (extending the time to file objections from 10 to 14 days).

So **ORDERED** and **SIGNED** this 9th day of February, 2026.

Bill Davis
United States Magistrate Judge